**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Robert RINK, Defendant-Appellant.**

**No. 17988.**

United States Court of Appeals,
Seventh Circuit.

July 29, 1970.

———————◆———————

Sander N. Karp, Greenberg, Karp & Heitzman, Milwaukee, Wis., for the Wisconsin Selective Service Lawyer's Panel and for defendant-appellant.

David J. Cannon, U. S. Atty., Richard E. Reilly, Terry E. Mitchell, Asst. U. S.

Attys., Milwaukee, Wis., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KILEY, Circuit Judge.

Defendant Rink was convicted by the district court, without a jury, of willfully refusing to submit to induction into the armed forces. 50 U.S.C. App. § 462. He appeals. We reverse.

Rink registered for the draft February 16, 1965, and was classified I-A on March 23, 1965. For our purposes now, it is needless to relate the history of Rink's course before his local and appeal boards between the date of his registration and the final induction order in April, 1968, under which he refused to submit. The significant event in that history is his application for I-O classification.

At Rink's request, the local board on May 31, 1966 sent him the requisite Form 150 for conscientious objector. The board issued an induction order June 6 and received the executed Form 150 from Rink on June 10, 1966. The induction was postponed and Rink, in response to the board's request, personally appeared.

After this appearance and hearing, the board again classified Rink I-A. He appealed, and the appeal board, in accordance with the then effective Section 6 (j),[1] sent Rink's file to the Department of Justice for inquiry and recommendation. The Department recommended against classifying Rink I-O or I-A-O. The appeal board thereafter classified Rink I-A. The local board's final induction order, Rink's refusal to submit, his indictment, trial and conviction, and the appeal before us followed.

On appeal Rink claims denial of due process in the conduct of his local board, the Department of Justice, and the appeal board; error by the district court

1. Uniform Military Training and Service Act § 6(j), 62 Stat. 613 (1948), 50 U.S.C. App. § 456(j) (1964).

in his criminal trial with respect to Rink's burden of proof; and that there is no basis in fact in his file for denial of his application for conscientious objector classification. We do not reach any of these claims.

After the oral argument of this case, the United States Supreme Court decided Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), which decision, in our view, requires us to reverse Rink's conviction. The Court there continued its interpretation of Section 6(j) first made in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), with respect to I-O claims based on areligious grounds. The Court concluded that "[S]ection [6(j)] exempts from military service all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war."[2]

We read *Welsh* to hold that under Section 6(j) a registrant may qualify for a conscientious objector classification even though his opposition to war is based upon moral and ethical foundations rather than upon more conventional religious training; and that such a registrant's beliefs, whatever their source, must be "strong" and "deeply held" before he will qualify for the exemption.

Rink's Form 150 based his request for I-O classification on "(B) I am, by reason of my religious training and belief, conscientiously opposed to * * * war in any form. * * *" He answered in the affirmative the question "Do you believe in a Supreme Being?" In response to the Form direction that he "Describe the nature of [his] belief," he wrote "See attached sheet." The attached typewritten sheets described his "moral code, encompassing principles transcend[ing] human relations." This code, he stated, was based upon teachings of his father, secular books he had read, and the "lives of great modern men." His only references in the "attached sheets" to religious sources of his beliefs were his statements that he believed it "fundamental to any religious belief" that rational men are not by nature violent and that the Catholic Church taught that all men have a right to life that cannot be abridged by other men.

In support of its recommendation against Rink's application the Department of Justice stated: "Furthermore, the registrant's use of the term 'code' * * * provides the best clue to his position. Section 6(j) * * * does not extend the exemption * * * to those whose position is based on a personal moral code." The Department concluded that "the registrant is not sincere in putting forth his claim of conscientious objection *on religious grounds.* * * *" (Emphasis added.)

On the basis of these facts we conclude that Rink's application was based upon his asserted beliefs derived, at best, only in a minor way from conventional religious sources. The general tenor of his application is that the beliefs he holds derive more from secular sources. He referred to his Roman Catholic training and beliefs more because he felt the law required a religious basis for his beliefs, than that his religious training was the true source of his beliefs.

But the rejection of his claim, so far as the record shows, is based solely on the fact that his conventional religious

2. 398 U.S. at 342, 90 S.Ct. at 1798. Concerning Section 6(j)'s exclusion provision the Court said:

We certainly do not think that § 6(j)'s exclusion of those persons with "essentially political, sociological, or philosophical views or a merely personal moral code" should be read to exclude those who hold strong beliefs about our domestic and foreign affairs or even those whose conscientious objection to participation in all wars is founded to a substantial extent upon considerations of public policy. The two groups of registrants which obviously do fall within these exclusions from the exemption are those whose beliefs are not deeply held and those whose objection to war does not rest at all upon moral, ethical, or religious principle but instead rests solely upon considerations of policy, pragmatism, or expediency.

beliefs were not sincere. There is no mention anywhere in his file of the sincerity, or of the depth, of his secularly based beliefs.

So far as the record shows, neither the Justice Department nor the Selective Service boards which reviewed Rink's application considered Rink's secularly based beliefs to be of any relevance to his application under Section 6(j). The Supreme Court's opinion in *Welsh* demonstrates the error of that conclusion. Under *Welsh*, before Rink's application could be properly denied, his local board had the obligation to decide upon not only the sincerity of his conventional religious beliefs but also whether his secularly based moral opposition to any war entitled him to I-O classification.

Rink's conviction must be reversed because the induction order subject of the indictment and trial is invalid for want of due process in the failure of Rink's local board to determine whether he is entitled to exemption on the ground of his secular based moral code, under the test of Welsh v. United States. This holding is without prejudice to the Selective Service System's power to reconsider Rink's Form 150 and supplementary material and to make the required determination.

Judgment reversed.